UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:16-cr-00152-JAW |
| | ) | |
| REGINALD McBRIDE | ) | |

**ORDER ON MOTIONS IN LIMINE**

With trial looming, the Government filed three motions in limine. Although the justification of self-defense is not available to a defendant charged with being a felon in possession of a firearm, the Court concludes that the Defendant may put the Government to its proof to establish that his use and possession of the firearm was during and in relation to and in furtherance of a drug trafficking crime. The Court grants the Government's motions in limine to permit the Government to introduce evidence that the Defendant was a prohibited person at the time of his possession and use of the firearm and that the firearm was stolen in order to support its case that the Defendant possessed and used the firearm during and in relation to and in furtherance of a drug trafficking crime. The Court holds in abeyance other related evidentiary issues until presented in the specific context of the trial.

**I.  BACKGROUND**

On November 10, 2016, a federal grand jury issued an indictment against Kweasia[1] McBride alleging that he committed a federal crime: being a prohibited

---

[1]  The indictments refer to the Defendant as Reginald McBride with a number of aliases, including Kweasia McBride. In his response, Mr. McBride refers to himself as Kweasia McBride and the Court has therefore used Mr. McBride's preferred first name in the body of the opinion, though the captions of the indictments have not been changed.

person in possession of a firearm, an alleged violation of 18 U.S.C. § 922(g)(1). *Indictment* (ECF No. 1). The asserted basis for his prohibition was the commission of five prior felonies. *Id.* at 1-2. On February 15, 2017, a federal grand jury issued a superseding indictment against Mr. McBride, alleging that in addition to the felon in possession of a firearm charge, he committed two other federal crimes: (1) possession with the intent to distribute heroin, an alleged violation of 21 U.S.C. §841(b)(1)(C), and (2) carrying and discharging a firearm during and in relation to and in furtherance of a drug trafficking crime, an alleged violation of 18 U.S.C. § 924(c)(1)(A)(iii). *Superseding Indictment* (ECF No. 24). On November 8, 2017, a federal grand jury issued a second superseding indictment, striking an allegation in the superseding indictment about a 1998 conviction in the state of New York for criminal possession of a weapon in the fourth degree as constituting a predicate felony, but leaving the allegation that Mr. McBride had committed the remaining four felonies before his alleged June 26, 2016 possession of a firearm. *Second Superseding Indictment* at 1-2 (ECF No. 48). On January 23, 2018, the case was scheduled for jury trial beginning on March 8, 2018 with jury selection on March 6, 2018. *Notice of Hr'g* (ECF No. 69, 70).

On November 9, 2017, the Government filed three motions in limine. *Gov't's First Set of Mots. in Limine* (ECF No. 51) (*Gov't's First Mot.*); *Gov't's Second Mot. in Limine* (ECF No. 54) (*Gov't's Second Mot.*); *Gov't's Third Mot. in Limine* (ECF No. 55) (*Gov't's Third Mot.*). On December 8, 2017, Mr. McBride responded to the first motion in limine. *Def.'s Resp. to Gov't's First Mot. in Limine* (ECF No. 65) (*Def.'s First Resp.*).

On November 30, 2017, he responded to the Government's second and third motions in limine. *Def.'s Resp. to Gov't's Second & Third Mots. in Limine* (ECF No. 61) (*Def.'s Second & Third Resp.*). The Government replied to Mr. McBride's responses on December 13, 2017 and December 21, 2017 respectively. *Gov't's Reply to Def.'s Resp. to Gov't's Second & Third Mots. in Limine* (ECF No. 67) (*Gov't's Second & Third Replies*); *Gov't's Reply to Def.'s Resp. to Gov't's First Mot. in Limine* (ECF No. 68) (*Gov't's First Reply*).

## II. THE FACTS

### A. The Government's Proffered Evidence

In its memorandum, the Government proffered:

On June 26, 2016, Mr. McBride was the passenger in a Ford Taurus car and a female drove him in the Ford to a Walmart store in Augusta, Maine. *Gov't's First Mot.* at 2. A Volkswagen car followed the Ford to the Walmart parking lot. *Id.* Once the Ford and Volkswagen arrived at the parking lot, there was a dispute between the occupants of both vehicles. *Id.* During the dispute, Mr. McBride grabbed his firearm, a Kel-Tec 9 mm pistol and fired multiple rounds at a male who had traveled to the Walmart in the Volkswagen. *Id.* The male at whom Mr. McBride fired his pistol, fired shots back at Mr. McBride. *Id.* After Mr. McBride fired the Kel-Tec pistol at the other male, Mr. McBride threw the pistol on the ground. *Id.* Mr. McBride then became involved in a physical altercation with the other male and with a female who had been in the Volkswagen. *Id.* at 2-3. The altercation took place near the Volkswagen and Ford cars. *Id.* at 3.

3

After the altercation, Mr. McBride got back into the Ford and the female driver drove from the Walmart parking lot with him. *Id.* Police officers followed the Ford and stopped it in a residential driveway. *Id.* Officers approached the female driver and Mr. McBride and detained them. *Id.* Officers found suspected heroin in Mr. McBride's possession and a laboratory screening confirmed that the substance was heroin and that it weighed 40.991 grams. *Id.*

After the shooting on June 26, 2016, officers conducted a *Mirandized* interview of Mr. McBride. *Id.* Mr. McBride admitted possessing the pistol he discharged in the Walmart parking lot, discharging the pistol multiple times, and throwing it on the ground. *Id.* Mr. McBride admitted that the pistol he fired was his pistol, that he pulled out the pistol during the dispute, and that he purchased the pistol. *Id.* He claimed that he had bought the pistol legally. *Id.*

On July 6, 2016, officers executed a search warrant on the Ford. *Id.* Underneath the passenger seat where Mr. McBride had been sitting, officers located a loaded, Imperial Metal Products, model 7, .22 caliber revolver. *Id.* In the trunk, officers found a Jennings, model 38, .32 caliber firearm and a Cobra Enterprises of Utah, Inc. model C22M, .22 caliber firearm. *Id.* Also in the trunk, officers found multiple scales, ammunition, and a firearms speed loader. *Id.*

Before June 26, 2016, Mr. McBride was prohibited from possessing firearms because he had multiple felony convictions. *Id.* at 3-4. Officers discovered that the Kel-Tec pistol had been stolen and that Mr. McBride was not the original purchaser of the Kel-Tec. *Id.* at 4.

## III. THE PARTIES' POSITIONS

### A. The First Motion in Limine: Self-Defense

#### 1. The Government's Motion

In the Government's first motion in limine, the Government seeks to prevent Mr. McBride from presenting evidence of self-defense to the charge in Count One of the second superseding indictment, the felon in possession charge, because in its view self-defense is not a legal justification to the charge of being a felon in possession of a firearm. *Id.* at 4-6. Similarly, the Government seeks an order prohibiting Mr. McBride from presenting evidence of self-defense to the charge in Count Three of the second superseding indictment, the carrying and using a firearm during and in relation to a drug trafficking offense, possessing the firearm in furtherance of the drug trafficking crime, and discharging the firearm. *Id.* at 7-10.

#### 2. Kweasia McBride's Response

In his response, Mr. McBride confirms that he does not intend to assert self-defense as a defense to Counts One and Three. *Def.'s First Resp.* at 1. In his words, he "does not intend to argue at trial that the circumstances justified the Defendant in having 'carried and used during and in relation to . . . .'" *Id.* at 2. Nor does he "argue that the circumstances justified the Defendant in having 'possessed [a firearm] in furtherance of . . . .'" *Id.*

Nevertheless, Mr. McBride does intend to put the Government to its proof on whether he carried and used a firearm "during and in relation to a drug trafficking crime," *id.* at 2, and whether he "possessed [a firearm] in furtherance of" a drug trafficking crime. *Id.* In other words, Mr. McBride intends to argue that his

5

possession and use of the firearms were related not to a drug trafficking offense but "as a necessary response under the circumstances for protection of self or another." *Id.*

### 3. The Government's Reply

The Government objects to Mr. McBride's response. *Gov't's Reply* at 1-5. In the Government's view, Mr. McBride's position is simply a self-defense argument in a different guise. *Id.* at 1. It reiterates that self-defense is not a legal justification for either the felon in possession or possession and use charges. *Id.* at 1-2. The Government points to *United States v. Palumbo*, 468 Fed. Appx. 751, 752 (9th Cir. 2012) (unpublished) in which the Ninth Circuit wrote that "[t]he sentencing enhancement for discharge, 18 U.S.C. §924(c)(1)(A)(iii), does not require the discharge to be in furtherance of the drug offense. It requires only that the defendant possessed the gun in furtherance of a drug offense." *Gov't's Reply* at 3. Accordingly, the Government says that the Defendant's attempt to explain his misconduct is irrelevant. *Id.* at 2. The Government recites the anticipated evidence and argues that "[w]hen the defendant discharged the firearm, he had already committed and was continuing to commit the offense of carrying and using a firearm during and in relation to, and possessing the firearm in furtherance of, the drug trafficking offense." *Id.* at 4.

### B. The Second and Third Motions in Limine: Stolen Firearm and Felony Status

#### 1. The Government's Motion

In its second motion in limine, the Government represents that the Kel-Tec 9 mm pistol that it alleges Mr. McBride possessed and used on June 26, 2016 was stolen. *Gov't's Second Mot.* at 1. The Government says that during its investigation into this case, it determined that the Kel-Tec was reported stolen on January 21, 2016. *Id.* The Government states that Mr. McBride was not the original purchaser of the firearm. *Id.* at 1. The Government cites caselaw which it argues stands for the proposition that the fact a firearm is stolen is admissible to prove a § 924(c) case. *Id.* at 2. Finally, it notes that it should be allowed to introduce this evidence to counter Mr. McBride's statement to the police that he had purchased the Kel-Tec legally. *Id.*

In its third motion in limine, the Government maintains that it should be allowed to argue to the jury that Mr. McBride's "status as a convicted felon is relevant in determining whether he is guilty of violating 18 U.S.C. § 924(c) as charged in Count 3 of the Second Superseding Indictment." *Gov't's Third Mot.* at 1. The Government cites caselaw from the Third and Fifth Circuits that states that a jury should be allowed to consider whether a defendant's possession of a firearm was legitimate or illegal in determining whether the Government has met its burden on the § 924(c) charge. *Id.* at 2. Similarly, the Government says that it should be permitted to argue the illegality of his possession in response to his statement to the police after the incident that he legally purchased the firearm. *Id.*

7

### 2. Kweasia McBride's Response

Mr. McBride incorporates his response to the second and third motions in one response because they raise similar issues. Mr. McBride concedes that under Fifth Circuit law, whether a firearm was stolen and whether a defendant could legally possess a firearm have been deemed relevant to a § 924(c) charge. *Def.'s Second & Third Resp.* at 1-2. However, Mr. McBride reviews First Circuit law and contends that the First Circuit has not directly adopted the Fifth Circuit's rule. *Id.* at 2-3. Mr. McBride notes that in *United States v. Sherman*, 551 F.3d 45, 50 (1st Cir. 2008), the First Circuit listed certain properly-considered factors but did not include whether the firearm was stolen. *Def.'s Second & Third Resp.* at 2; *see Sherman*, 551 F.3d at 50 ("[T]his court has acknowledged a number of factors that the trier of fact may consider including 'whether the firearm was loaded, whether the firearm was easily accessible, the proximity of the firearm to the drugs, and the surrounding circumstances'") (quoting *United States v. Robinson*, 473 F.3d 387, 400 (1st Cir. 2007)).

He acknowledges that in *United States v. Felton*, 417 F.3d 97, 105 (1st Cir. 2005), the First Circuit quoted a district court jury instruction on a § 924(c) case that included reference to whether the firearm was stolen as a factor for jury consideration, but Mr. McBride says that the § 924(c) instruction was not challenged on appeal. *Def.'s Second & Third Resp.* at 2-3. He also admits that in *United States v. Marin*, 523 F.3d 24, 28 (1st Cir. 2008), the First Circuit concluded that the fact a firearm had an obliterated serial number was properly considered by a jury in a § 924(c) case. *Def.'s Second & Third Resp.* at 3.

Mr. McBride maintains that evidence the weapon was stolen would be unfairly prejudicial to him. *Id.* at 3. Similarly, Mr. McBride argues that evidence of any of his prior felony convictions would be unfairly prejudicial. *Id.* He also says that an inquiry into the "stolen weapon factor":

> invites inquiry into additional facts irrelevant to this case, including: how the Defendant came into possession of the weapon, when the Defendant came into possession of the weapon in relation to its stolen status, whether the Defendant had involvement in the theft of the gun and whether the Defendant had any subjective awareness of the stolen status of the gun.

*Id.* at 4. Mr. McBride worries that the trial of the § 924(c) charge "could turn into a firearm theft trial as a companion, and tangentially-related matter." *Id.* Even if the jury may consider whether the firearm was stolen as a factor under § 924(c), Mr. McBride urges the Court to view the evidence as "not automatically admissible" and to consider "rules-based objections" and issue rulings as they arise. *Id.* at 5.

### 3. The Government's Reply

In reply, the Government urges the Court to reject Mr. McBride's invitation to disregard the factors in *United States v. Ceballos-Torres*, 218 F.3d 409, 413-16 (5th Cir. 2000), a Fifth Circuit case. *Gov't's Second & Third Replies* at 1-2. Furthermore, the Government contends that Mr. McBride has misinterpreted First Circuit precedent on the stolen firearm issue. *Id.* at 2-3. It argues that in *Sherman*, the First Circuit "neither rejected the factors set forth in *Ceballos-Torres* nor did it cite *Ceballos-Torres* unfavorably." *Id.* at 3. The Government says that the First Circuit's *Felton* and *Marin* decisions support the Government's position. *Id.* at 3-4. The Government cites other circuits that have agreed with the Fifth Circuit. *Id.* at 4. The

9

Government explains its view of the probative value of the fact the firearm was stolen: "The fact that the defendant was unlawfully possessing the pistol at the time he was engaging in drug trafficking is inconsistent with mere innocent possession." *Id.* at 5. In addition, "[t]he fact that the pistol was stolen demonstrates that the defendant was not possessing the pistol for lawful or innocent purposes . . ." and "supports the fact that the defendant was possessing the pistol to further his drug trafficking activity." *Id.*

Acknowledging that evidence of the stolen nature of the firearm would be prejudicial to Mr. McBride, the Government asserts it would not be unfairly prejudicial. *Id.* at 5-6. The Government also notes that evidence of his "prohibited status" would be admissible and particularly so, because Mr. McBride told the officers that his possession was in fact legal, which demonstrates in the Government's view "consciousness of guilt." *Id.* at 6-7.

The Government brushes aside Mr. McBride's worries about a trial within a trial. *Id.* at 7. The Government apparently plans to introduce only the fact that the firearm was stolen; it does not intend to introduce evidence that Mr. McBride stole it or how Mr. McBride came to possess it. *Id.* ("[T]he applicable inquiry is whether the pistol was stolen, not how the defendant came into possession of it").

IV. **DISCUSSION**

   A. **The First Motion in Limine**

The Court agrees with Mr. McBride on the admissibility of evidence of why he carried and discharged a firearm on June 26, 2016. To prove Count Three, the Government must prove two elements: (1) that Mr. McBride committed the drug

10

trafficking charge in Count Two; and (2) that he "knowingly used or carried a firearm during and in relation to" the drug trafficking crime alleged in Count Two and that he possessed the Kel-Tec pistol in furtherance of the drug trafficking crime." *See* Judge Nancy Torresen, PATTERN CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE FIRST CIRCUIT § 4.18.924 (updated Dec. 15, 2017). The indictment also charges that Mr. McBride discharged the firearm. *Second Superseding Indictment* (ECF No. 48).

Regarding the "during and in relation to" element, the First Circuit endorsed as adequate and accurate a jury instruction:

> The words "during and in relation to" are to be given their plain and customary meaning. The phrase "in relation to" is expansive. At a minimum it means that the firearm must have had some purpose or effect with respect to the drug trafficking crime. If a firearm is present simply as a result of coincidence or accident it cannot be said that it was used or carried in relation to the drug traffic[king] offense. The firearm must have facilitated or have had the potential to facilitate the drug offense.

*United States v. Roberson*, 459 F.3d 39, 44-46 (1st Cir. 2006). The term, "during and in relation to" a drug trafficking offense has been "interpreted capaciously." *United States v. De La Paz-Rentas*, 613 F.3d 18, 27-28 (1st Cir. 2010). It "still requires at a minimum that the firearm had "some purpose or effect with respect to the drug trafficking crime." *Id.* at 28 (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)). The "possession . . . in furtherance" language requires the Government to demonstrate that the defendant possessed the firearm "to advance or promote the commission of the underlying offense." *United States v. Delgado-Hernandez*, 420 F.3d 16, 25 (1st Cir. 2005) (quoting H.R.Rep. No. 105-344, at 11 (1997)).

11

To illustrate why the Court concludes that Mr. McBride will be allowed to present evidence and argue to the jury that the Government failed to meet its burden on Count Three, assume that the Government is able to prove that Mr. McBride was involved in drug trafficking, but the evidence also shows that Mr. McBride knew the male occupant of the Volkswagen to be a violent, nasty and dangerous person who usually carried a firearm and who held a longstanding grudge against Mr. McBride unrelated to drug trafficking. Further assume that when they encountered each other in the parking lot, Mr. McBride and the other male engaged in a war of words, not over drugs, but over something else. Finally, assume that the evidence also demonstrated that although Mr. McBride pulled out and shot his Kel-Tec, he did not do so because of drugs but because he feared the other male.

In these circumstances, Mr. McBride would clearly be allowed to present evidence of an alternative reason for his firearm possession and use, and to argue to a jury that the Government had not established all the elements of Count Three. Although Mr. McBride's argument has aspects similar to self-defense, it remains the Government's burden to prove that Mr. McBride's possession and use of the firearm were linked to the drug trafficking offense and not to some other cause. There are some outer limits to allowing a defendant to argue a theory of the case wholly unsupported by the evidence, but at this stage, the Court does not know all the evidence the parties, particularly Mr. McBride, will introduce at trial on this precise subject. The Court is not in a position to rule out evidence in anticipation of trial when it does not know what that evidence will be.

Finally, in his response, Mr. McBride stated that he

> would not object to a limiting instruction at the appropriate time explaining to the jury that if it finds a firearm discharge occurred they can consider the circumstances surrounding the discharge as relevant to whether the Government can successfully prove that the Defendant "used and carried during and in relation to" or "possessed in furtherance of" a drug trafficking crime and that the jury is not asked to decide whether self-defense or defense of others principles apply."

*Def.'s First Resp.* at 3-4. The Court directs counsel to consult each other to determine whether such an instruction should be given and, if so, the proper language of the instruction.

### B. The Second and Third Motions in Limine

Regarding the first issue — whether the fact that a firearm is stolen is a factor that a jury may consider in evaluating a § 924(c) charge — the Court agrees with the Government. The Court begins with *United States v. Luciano*, 329 F.3d 1 (1st Cir. 2003), where the First Circuit first cited *Ceballos-Torres*. *Luciano*, 329 F.3d at 6. In *Luciano*, the First Circuit observed that to prove a § 924(c) charge, the Government must prove "a sufficient nexus between the drug trafficking crime and the firearms." *Id.* The First Circuit described a number of factors relevant to the nexus in that case, including: (1) the value of the drugs, and (2) the fact that drug dealers often use firearms to protect drug stockpiles, to prevent encroachment by other dealers, and for retaliation. *Id.* The *Luciano* Court concluded that the "close proximity of the firearms and the loaded magazines to the significant stockpile of heroin" was sufficient to establish a nexus between the possession of the firearm and the drug trafficking. *Id.*; *see also United States v. Garner*, 338 F.3d 78, 81 (1st Cir. 2003).

13

In *United States v. Carlos Cruz*, 352 F.3d 499 (1st Cir. 2003), the First Circuit quoted with approval the language in *Ceballos-Torres*, where the Fifth Circuit included "whether the weapon was stolen" among the factors a jury could consider under § 924(c). *Id.* at 509-10 (quoting *Ceballos-Torres*, 218 F.3d at 415).

The First Circuit next cited *Ceballos-Torres* in *United States v. Grace*, 367 F.3d 29 (1st Cir. 2004). In *Grace*, the First Circuit discussed *Ceballos-Torres* in footnote 5 and wrote in part:

> After noting that the gun in that case was loaded, accessible, and stored in an apartment with drugs <u>and that the defendant acquired the gun illegally</u>, the *Ceballos* court concluded that the gun protected the defendant's drugs and money against robbery and, therefore, that the defendant's possession of the gun furthered his drug trafficking.

*Id.* at 35 n.5 (emphasis supplied).

In 2005, the First Circuit quoted a trial judge's jury instructions on a § 924(c) charge, which expressly included a reference to whether the firearm was stolen as a proper factor for jury consideration, and did not suggest that the instruction was incorrect. *Felton*, 417 F.3d at 104-05. The *Felton* Court compared a § 924(c) case with the "paradigm case of a weapon purchased for some innocent purpose that happened to be stored near the crime." *Id.* at 106.

In *Robinson*, a 2007 case, the First Circuit used general language in discussing the factors a jury may consider in a § 924(c) case: "[W]hether the firearm was loaded, whether the firearm was easily accessible, the proximity of the firearm to the drugs, <u>and the surrounding circumstances</u>." *Id.* at 399-400. In *Marin*, the First Circuit observed that a jury could consider "that the gun had an obliterated serial number and that [the defendant] admitted that he purchased the gun from another cocaine

dealer" as supporting "an inference that he subjectively intended to possess the weapon in furtherance of the underlying drug crime." 523 F.3d at 28.

Finally, in *Sherman*, the First Circuit wrote that the "in furtherance" element "does not have a settled, inelastic, definition." 551 F.3d at 50 (quoting *Marin*, 523 F.3d at 27). The First Circuit has analyzed the issue from both objective and subjective standpoints. *Id.* As regards the objective analysis, the *Sherman* Court stated:

> Applying the objective analysis, this court has acknowledged a number of factors that the trier of fact may consider including "whether the firearm was loaded, whether the firearm was easily accessible, the proximity of the firearm to the drugs, and the surrounding circumstances. *Id.* (quoting *Robinson*, 473 F.3d at 400); *see also Felton*, 417 F.3d at 105 (type of weapon <u>and legality of possession</u>") . . . .

*Id.* (emphasis supplied).

The most that can be said of Mr. McBride's argument is that the First Circuit has not expressly held that the legality of a defendant's possession of a firearm may be considered by a jury in evaluating a § 924(c) charge, but it has all but said it. Furthermore, in reviewing the § 924(c) cases that the First Circuit has decided, the fact patterns have not directly presented a case where this issue has been raised. Moreover, all the other circuits that have considered the issue have ruled in favor of admissibility. *United States v. Snow*, 462 F.3d 55, 62 n.6 (2d Cir. 2012); *United States v. Walker*, 657 F.3d 160, 172 (3d Cir. 2011); *United States v. Moore*, 769 F.3d 264, 270 (4th Cir. 2014); *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004) (citing *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)); *United States v. Brown*, 724 F.3d 801, 803 (7th Cir. 2013) (citing whether the weapon is stolen as among the

15

"canonical factors"); *United States v. Mosely*, 465 F.3d 412, 415-16 (9th Cir. 2006) (observing that the Ninth Circuit has rejected a 'checklist' approach but stating that whether a firearm is unregistered is an appropriate factor to consider); *United States v. Bustos*, 303 F. Appx. 656, 668 (10th Cir. 2008) ("[W]e . . . continue to hold illegal firearm possession is a relevant factor in determining whether possession of a firearm or ammunition was in furtherance of a drug trafficking crime"); *United States v. Woodard*, 531 F.3d 1352, 1362 (11th Cir. 2008). By contrast, Mr. McBride has offered no authority from any jurisdiction that has accepted his position.

As to the relevance and probative value, Mr. McBride's argument does not pass the common sense test. Assume that Mr. McBride were legally entitled to possess a firearm, that he had gone to a local federally-licensed firearms dealer and properly purchased the firearm, that he had assiduously kept it under lock and key, and that he had routinely used it at a local gun range in target shooting. Certainly this cumulative evidence would be admissible to allow an inference that his possession was a "paradigm case of a weapon purchased for some innocent purpose that happened to be stored near the crime." *Felton*, 417 F.3d at 106. But the opposite must also be true. If, as the Government alleges in this case, the firearm was stolen and if, as the Government alleges, Mr. McBride could not legally possess a firearm to begin with, a jury should be allowed to consider these factors as part of the "surrounding circumstances" of his possession and use of the firearm. *See Robinson*, 473 F.3d at 400.

Regarding unfair prejudice, Mr. McBride has a point about how much of this evidence comes before a jury. The wrinkle in this case is that Mr. McBride is contesting whether he was a prohibited person at the time of his firearm possession on June 26, 2016. *See Old Chief v. United States*, 519 U.S. 172, 174 (1997) (concluding that when a defendant offered to stipulate that he had been convicted of a crime punishable by imprisonment exceeding one year, the district court abused its discretion in admitting his actual record of conviction because of its discounted probative value was substantially outweighed by the risk of unfair prejudice). In his trial brief, he acknowledges his right to "pursue the approach established by the courts as a result of the case *Old Chief v. U.S.*" *Def.'s Trial Br.* at 3 (ECF No. 74). Nevertheless, "he disputes that he is a prohibited person. He is aware that the prior conviction evidence of the Government will be presented on this issue of fact." *Id.*

In its trial brief, the Government indicated its intention to introduce into evidence certified court records of four prior felony convictions: Possession of a Controlled Drug (State of Virginia, Circuit Court of Fairfax County), Forging a Public Record (State of Virginia, Circuit Court of Fairfax County), Distribution of Cocaine, (State of Virginia, Circuit Court of the City of Alexandria), and Criminal Possession of a Weapon in the Third Degree (Supreme Court of New York, New York County). *Gov't's Trial Br.* at 3, 9 (ECF No. 75).

The Court assumes that based on Mr. McBride's recently-made strategic decision to contest whether he was a prohibited person at the time of the June 26, 2016 incident and on his acknowledgement that the Government will be allowed to

17

introduce evidence of the actual prior convictions, his earlier-expressed objection to any evidence of the actual nature of his prior convictions has been significantly eclipsed by his current position. This development substantially mitigates the potential prejudice of referencing his prior convictions. While Mr. McBride has the right to object to evidence the Government offers, it remains to be seen what is left of objectionable evidence, given the fact the jury is likely to learn about the exact nature, if not the details, of his alleged prior convictions.

Regarding the stolen firearm evidence, the Court gathers that the Government intends to present evidence, presumably through the original purchaser and legal owner of the Kel-Tec, that the weapon had been stolen from the true owner. The Government does not intend to present further evidence as to how Mr. McBride himself came into possession of the firearm. *Gov't's Second & Third Replies* at 7. As explained, the Court views this evidence as permissible under First Circuit guidance and the prejudicial impact against Mr. McBride as relatively benign, because the Government is not asserting that he stole the firearm or that he came into possession of the firearm knowing it was stolen.

In view of the narrow set of evidence the Government wishes to present, the First Circuit's approval of the jury's consideration of evidence of the stolen nature of the firearm, and the absence of any specificity as to potential prejudice beyond the inherent prejudice from any evidence of a stolen firearm, the Court's Federal Rule of Evidence 403 balancing analysis favors admission of the evidence the Government has proffered. If the parties, particularly Mr. McBride, wish to present the jury with

a limiting instruction for the Court to give the jury at the time of the admission of this evidence, they should feel free to do so. If the Government wishes to present a broader range of evidence of the stolen nature of the firearm, counsel for the Government will have to approach the bench before doing so.

V. **CONCLUSION**

The Court GRANTS in part and DISMISSES in part the Government's First Set of Motions in Limine (ECF No. 51). The Court GRANTS the Government's motion insofar as it contends that the Defendant will not be allowed to assert the defense of self-defense to Count One, the felon in possession charge; the Court DISMISSES the Government's motion insofar as it relates to Count Three, the during and in relation to and possession in furtherance of charge, because more facts are necessary to make a final ruling.

The Court GRANTS the Government's Second Motion in Limine (ECF No. 54) and the Government's Third Motion in Limine (ECF No. 55). The Court concludes that evidence that the Defendant's possession of the Kel-Tec pistol was illegal and that the Kel-Tec pistol was stolen is admissible at trial. The Court withholds further rulings on these issues until specific evidence is presented at trial.

SO ORDERED.

    /s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of March, 2018